# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| Arecely Gamez, AND JEFFRY TAKILI, *on behalf of themselves and all others similarly situated,* | Case No.:  4:23-cv-262 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Toyota Motor Sales, U.S.A., Inc., a Texas corporation; and Toyota Motor North America, Inc., a Texas corporation, | |
| Defendants. | |

Plaintiffs Arecely Gamez and Jeffry Takili ("Plaintiffs"), hereby complain against Defendants Toyota Motor Sales, U.S.A., Inc., and Toyota Motor North America, Inc. (collectively "Defendants" or "Toyota").  Defendants made and/or sold vehicles with defective sunroofs. *E.g.* from the Gamez vehicle:



Plaintiffs seek relief for themselves and classes of similarly situated consumers as set forth herein.

## INTRODUCTION

1.      Plaintiffs bring this lawsuit on behalf of themselves, a nationwide class and a California class consisting of past and present owners and lessees of defective 2021 Toyota RAV4 vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Toyota.

2.      Plaintiffs and the Class were damaged because the Class Vehicles contain defective panoramic roofs.[1]

3.      The Class Vehicles represent the first generation of RAV4 vehicles with an optional panoramic roof that commands a price premium of nearly $10,000 over the base model.

4.      Historically, automobile glass sunroofs or moonroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats.  Panoramic roofs are larger, command a premium price and replace metal roofs with large plates of glass.

5.      Toyota has failed to meet the associated manufacturing challenges because of the propensity of its panoramic roofs to spontaneously shatter. Specifically, Class Vehicles contain one or more defects in the way the vehicles are manufactured and/or made that causes the panoramic roofs to fracture and/or shatter (the "Glass Roof Defect" or the "Defect"). Upon information and belief, the Glass Roof Defect occurs due to either deficient materials used to make the panoramic roof itself, and/or deficient manufacturing processes, and/or a deficiency in the structure of the Class Vehicles.

6.      Over one hundred drivers have now reported to the National Highway Traffic and Safety Administration ("NHTSA") and complained on various Internet venues that their panoramic roofs shattered.

---

[1] "Panoramic roofs" means both panoramic sunroofs and panoramic moonroofs.

CLASS ACTION COMPLAINT

7.     The shattering is so powerful that startled drivers have compared it to the sound of a gunshot, followed by a rain of glass falling on the occupants of the vehicle, sometimes while driving at highway speeds.

8.     Toyota, however, has refused to repair or replace the panoramic roofs in Class Vehicles under Toyota's warranty, requiring that Class Vehicle owners to pay hundreds or thousands of dollars in repair. This includes instances where the Defect occurs soon after owners take possession.

9.     In addition, the replacement panoramic roofs provided by Toyota (which Class Vehicle owners must pay for out-of-pocket) are also defective and, as a result, some Class Vehicle owners have had to replace the replacements which themselves exploded. Indeed, the panoramic roof in Plaintiff Gamez's vehicle has exploded twice.

10.     As noted, the Glass Roof Defect can and often does manifest soon after Class Members take ownership of the vehicles:

- NHTSA Complaint No. 1699773/ID No. 11364557, October 15, 2020 (Incident Date October 12, 2020): "The contact owns a 2021 Toyota RAV4. The contact stated that while his wife was driving approximately 75 MPH, the glass sunroof suddenly exploded. During the failure, the sunroof was closed. The local dealer Valley High Toyota located at 14612 Valley Center Dr., Victorville, CA 92395 and the manufacturer were notified of the failure. ***The failure mileage was 1,500.***"

- NHTSA Complaint Nos. 1716991, 1716992/ID No. 11386212, January 3, 2021 (Incident Date December 31, 2020): "This issue happened on 12/31/2020. I was driving to work this evening. I came onto an onramp during my drive and I began increasing my speed to 70 MPH. As I'm accelerating I started to notice a whistling sound coming from the sunroof. I instantly assumed that my husband had accidentally opened the sunroof and had not closed it back up all the way. (***We have not had this car very long at all so we are still learning which buttons do what.***) As I pull back the cover I notice that there are shards of glass falling onto my lap from the sunroof. I was in complete shock and pulled over to make sure I was not mistaken. Sure enough the sunroof has shattered and there was glass everywhere. I have no way of explaining how this happened and I am very frustrated that I have to make a claim on a car I have had for maybe a month and a half and even more upset that I cannot explain how this

CLASS ACTION COMPLAINT

actually happened.  I was also surprised that there were people having similar issues with the sunroof!"

- NHTSA Complaint No. 1773786/ID No. 11437229, October 18, 2021 (Incident Date October 17, 2021): "Moon roof exploded and shattered while driving down the road in normal conditions, no other issues.  *Vehicle is less than 3 months old with 7,000 miles*.  It sounded like a gunshot and only because I reacted without panic did it not cause me to have an accident because of the major distraction.  Pulled over and no other damage.  Had to drive 45 miles per hour to my destination or glass would have sprayed on anyone behind me.  Currently, had to tarp and duct tape damage because dealership will not fix[] under warranty unless I can prove it was a defective glass/part.  My dealer did text me and I have it that there are problems but it's so hard to prove it will be my expense out of pocket.  I would appreciate any help on other Toyotas having a similar problem and wanted to officially report to help out the next person if I can't obtain proof of a defective part."

- NHTSA Complaints Nos. 1782742, 1782743/ID No. 11443668, December 13, 2021 (Incident Date December 12, 2021): "I found the moonroof of my *15-day old 2021 Toyota RAV4* spontaneously exploded while sitting parked in my driveway. As the shade that covers the moonroof was open, I incurred minor abrasions from not realizing that 's**t on my console" was not dust or fuzz but tiny shards of broken glass that I had already swiped with my hand.  There is a large, jagged hole near center on the rear section of glass and the entire moonroof is shattered.  Strangely, the glass around the hole is bowed outward as if something was shot through from the inside of the vehicle.  Thankfully I was not driving and did not have my kids in the car with me when it happened because there would have been definite safety issues for me, my passengers, and any others out on the road with me.  The car was last used about 6:30 pm on Saturday, 12/11/21 and not used again until about 11:15 am on Monday, 12/13/21.  It spent the time not being used parked towards the rear of my driveway, shaded by my house.  There are no trees or other possible falling hazards near my driveway and nothing found in or around my car to suggest a projectile/object was involved."

11.     The Glass Roof Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering, exploding, or cracking panoramic roof can distract the driver and result in dislodged glass that can injure drivers, passengers, and pedestrians.

12.     In addition to the safety issues, the cost to repair the Glass Roof Defect can be exorbitant – often more than $1,000 for a replacement panoramic roof – requiring consumers to pay significant sums over the life of their Class Vehicles.

4

CLASS ACTION COMPLAINT

13.     Had Plaintiffs and the Class Members known about the Glass Roof Defect, they would not have purchased the Class Vehicles or would have paid substantially less.

14.     Despite being notified of the Glass Roof Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on RAV4-enthusiast websites, discussion boards, and forums, and RAV4 Facebook Groups), warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Glass Roof Defect, has not issued bulletins to their dealerships acknowledging that the Class Vehicles suffer from the Glass Roof Defect, has not offered their customers a suitable repair or non-defective replacement on RAV4-enthusiast websites panoramic roof free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Glass Roof Defect.

15.     As a result, the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

16.     Plaintiffs have each given Toyota a reasonable opportunity to cure the Glass Roof Defect, but Toyota has refused to cure the defect or otherwise has been unable to do so within a reasonable time.

17.     Toyota's conduct is in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the California Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200 *et seq.*, the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1, 1791.2, 1792, and 1793 *et seq.*, breach of express warranty under Cal. Comm. Code § 2313, and such conduct constitutes a breach of express and implied warranties under the Magnuson-Moss Warranty Act.

CLASS ACTION COMPLAINT

18.     To remedy Toyota's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Toyota, as well as notification to class members about the defect.

## PARTIES

19.     Plaintiff Aracely Gamez ("Plaintiff Gamez" or "Ms. Gamez") is an adult individual residing in Victorville, California.

20.     Plaintiff Donna Miranda ("Plaintiff Miranda" or "Ms. Miranda") is an adult individual residing in Placentia, California.

21.     Plaintiff Jeffry Takili ("Plaintiff Takili" or "Mr. Takili") is an adult individual residing in Sacramento, California.

22.     Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. are Texas corporations with their principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. Toyota is responsible for the manufacture, distribution, marketing, sale and lease of the Subject Vehicles in Texas and throughout the United States. Toyota has a nationwide dealership network and operates offices and facilities throughout the United States. Toyota distributes Toyota, Lexus, and Scion vehicles in the United States and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to Toyota.

23.     At all times herein mentioned, Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicles operated by Plaintiffs. Toyota also reviews and analyzes warranty data submitted by

6

Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendants decide to audit the dealership. Toyota uses this information to determine whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

24.     Toyota also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Glass Roof Defect.

**JURISDICTION AND VENUE**

25.     The Court has jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class members are citizens of states that are diverse from Defendants' citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Toyota resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I.   Aracely Gamez

27.     On September 18, 2020, Ms. Gamez purchased a new 2021 Toyota RAV4

7

Limited, Vehicle Identification Number JTMN1RFV5MD069193 (hereafter the "Gamez Vehicle") from San Francisco Toyota in San Francisco, California, an authorized Toyota dealership (hereinafter "San Francisco Toyota").

28.    Passenger safety and reliability were important factors to Ms. Gamez' decision to purchase the vehicle. Prior to purchasing the 2021 Toyota RAV4, Ms. Gamez researched the vehicle by looking at the Toyota's Monroney sticker affixed to the vehicle's passenger window. Specifically, Ms. Gamez chose this specific vehicle due to availability of an all-wheel-drive and the panoramic glass roof.  Based on Toyota's representations, Ms. Gamez was led to believe that the 2021 Toyota RAV4 was, among other things, a safe, reliable, and high-quality vehicle.

29.    Prior to the purchase, San Francisco Toyota assured Ms. Gamez that the Gamez Vehicle was accompanied by Toyota Motor Sales, U.S.A., Inc.'s New Vehicle Limited Warranty.

30.    In its New Vehicle Limited Warranty Toyota promised to "correct defects in materials or workmanship of any part supplied by Toyota" without charge within 3 years or 36,000 miles in service, whichever occurs first.

31.    Neither Toyota nor the selling dealership disclosed at the time of purchase or before that the 2021 Toyota RAV4 contained the Glass Roof Defect. Indeed, Toyota concealed this information from consumers, and Ms. Gamez was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Glass Roof Defect when she purchased the vehicle.

32.    Toyota's omissions were material to Ms. Gamez. If Toyota had adequately disclosed these facts before Ms. Gamez purchased the vehicle, she would not have bought the vehicle.

CLASS ACTION COMPLAINT

33.    Approximately one month after her purchase, in October of 2020, Ms. Gamez experienced the Glass Roof Defect. Her panoramic roof exploded while she was driving her vehicle on the freeway. Below is a photograph Ms. Gamez took of the shattered glass roof:



34.    Immediately prior to the glass roof shattering in her car, Ms. Gamez did not see or hear anything impact the glass roof or the vehicle.

CLASS ACTION COMPLAINT

35.     Ms. Gamez is an experienced driver, **and she has driven several other vehicles equipped with panoramic roofs on similar roads**, in similar climate conditions, and at the same speeds, and none of those vehicles' panoramic roofs have spontaneously exploded.

36.     Right after the glass roof shattered in October of 2020, Ms. Gamez presented the Gamez Vehicle to San Francisco Toyota for repair.  She informed the dealership about the circumstances of the glass roof exploding and that she believes it was the result of a defect with the glass roof itself.  In response, San Francisco Toyota declined to perform the repair under Toyota's warranty.

37.     Ms. Gamez then submitted a claim to her insurance company and paid a $500.00 deductible in connection with the glass roof replacement in her car.

38.     A replacement was put in by Sunroof Express Inc. on October 19, 2020.

39.     The Gamez Vehicle experienced the Glass Roof Defect again on October 6, 2022, when it shattered around the seam. Below is a photograph Ms. Gamez took of the shattered glass roof:



CLASS ACTION COMPLAINT

40.     Again, Ms. Gamez submitted a claim to her insurance company and paid a $500.00 deductible in connection with the glass roof replacement in her car.

41.     A replacement was put in by Sunroof Express Inc. on October 11, 2022.

42.     On October 19, 2022, Ms. Gamez, through her counsel, sent a letter to Toyota advising it that the Gamez Vehicle suffered from the Glass Roof Defect and that Ms. Gamez was denied a replacement glass roof under Toyota's warranty.

43.     By a letter dated November 7, 2022, Toyota denied Ms. Gamez a repair under its warranty.

44.     At all times, Ms. Gamez has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**II.    Jeffry Takili**

45.     On December 31, 2021, Mr. Takili purchased a new 2021 Toyota RAV4 Prime XSE, Vehicle Identification Number JTMEB3FV0MD072822 (hereafter the "Takili Vehicle") from Toyota Town, in Stockton, California, an authorized Toyota dealership (hereinafter, "Toyota Town").

46.     Passenger safety and reliability were important factors to Mr. Takili's decision to purchase the vehicle. Prior to purchasing the 2021 Toyota RAV4, Mr. Takili researched the vehicle by looking at the vehicle's specifications and features in Toyota's brochures and by reviewing Toyota's Monroney sticker affixed to the passenger window of the vehicle. Based on Toyota's representations, Mr. Takili was led to believe that the 2021 Toyota RAV4 was, among other things, a safe, reliable, and high-quality vehicle.

47.     Prior to the purchase, Toyota Town assured Mr. Takili that the Takili Vehicle was accompanied by Toyota Motor Sales, U.S.A., Inc.'s New Vehicle Limited Warranty.

CLASS ACTION COMPLAINT

48.     In its New Vehicle Limited Warranty Toyota promised to "correct defects in materials or workmanship of any part supplied by Toyota" without charge within 3 years or 36,000 miles in service, whichever occurs first.

49.     Neither Toyota nor the selling dealership ever disclosed at the time of purchase or before that the 2021 Toyota RAV4 contained the Glass Roof Defect. Indeed, Toyota concealed this information from consumers, and Mr. Takili was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Glass Roof Defect when he purchased the vehicle.

50.     Toyota's omissions were material to Mr. Takili. If Toyota had adequately disclosed these facts before Mr. Takili purchased the vehicle, he would not have bought the vehicle.

51.     On November 8, 2022, less than a year after purchasing the vehicle and with approximately 15,300 miles on its odometer, the panoramic roof exploded.

52.     At the time Mr. Takili was driving on the freeway and prior to explosion he did not hear anything impact the vehicle or the panoramic roof.

53.     Mr. Takili pulled over to the side of the road and as he opened the sunshade, a shattered glass rained down into the vehicle.

54.     On November 9, 2022, Mr. Takili spoke to a Toyota Town Service Advisor and requested that the dealer replace the panoramic roof in his car under Toyota's warranty.

55.     Toyota Town refused to repair the panoramic roof under Toyota's warranty and quoted Mr. Takili $1,237.59 to perform a repair.

56.     Mr. Takili then submitted a claim to his insurance company in connection with the glass roof replacement in his car.

CLASS ACTION COMPLAINT

57.     On November 12, 2022, Safelite replaced the panoramic roof and charged Mr. Takili's insurance company $759.85 for a replacement panoramic roof and undisclosed amount for labor.

58.     On November 18, 2022, Mr. Takili, through his counsel, sent a letter to Toyota advising it that the Takili Vehicle suffered from the Glass Roof Defect and that Mr. Takili was denied a replacement panoramic roofs under Toyota's warranty.

59.     By a letter dated January 13, 2023, Toyota denied Mr. Takili a repair under its warranty.

60.     At all times, Mr. Takili has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS

**The Glass Roof Defect**

61.     Toyota has sold tens of thousands of 2021 RAV4 Class Vehicles across the United States.

62.     The Class Vehicles represent the first generation of RAV4 model line of vehicles with an optional panoramic roof.

63.     Panoramic roofs, in comparison to traditional sunroofs or moonroofs, are both wider and longer, covering most of the vehicle's roof. Since the panoramic roofs provide extra light and an "open air" feeling while driving, Toyota charges thousands of dollars for the option. To wit, Toyota markets the panoramic roofs as a luxury upgrade available on higher trim vehicles and only as part of an optional advanced technology package. For example, in gas powered RAV4 vehicles the panoramic roof option is only available starting with a "Limited" trim that commands a $8,530 premium over a base "LE" trim and only with selection of the Advanced Technology Package at a cost of $2,540. In hybrid powertrain RAV4 vehicles the

CLASS ACTION COMPLAINT

panoramic roof option is only available starting with a "XSE" trim that commands a $5,950 premium over a base "LE" trim and only with selection of the Advanced Technology Package at a cost of $3,665.

64.     The actual material cost of the panoramic sunroofs is fairly low, making the option a more profitable feature.

65.     Panoramic roofs are made of large glass plates that attach to tracks, which in turn are set within a frame attached to the vehicle. Most panoramic roofs, including those sold by Toyota, include a retractable sunshade. A photo of the panoramic roof in the Toyota RAV4 from Toyota USA's website appears below:



66.     Upon information and belief, Toyota makes its panoramic roofs out of tempered glass, also called a safety glass as when it breaks it separates into small pieces.  Tempered or safety glass is made by shaping and cutting a piece of annealed glass that is then heated and rapidly cooled. This tempering process creates an outer layer of compression that is shrink-wrapped around the middle of the glass, which is constantly pressing outwards, making the final

CLASS ACTION COMPLAINT

product stronger than non-tempered glass. If the outer layer is compromised, however, the entire piece of glass shatters explosively.

67.     In addition, a ceramic paint is applied before the panoramic roof glass undergoes tempering. The ceramic paint is generally composed of frits, pigments, and other additives. These ceramic enamels are applied on the top around the edges of panoramic roof glazing and serve aesthetic and functional purposes. The ceramic paint appears as a black band along the edge of the glass.

68.     Ceramic fusion of tempered glass makes the glass surface very unstable because it blocks the cold air and thus hampers the formation of compression stress on the surface.

69.     Further, to reduce road and wind noise, as well as to make panoramic roofs less susceptible to leaking rainwater, Toyota also takes steps to fasten the panoramic roof glass to the vehicle with a sufficient degree of tightness. However, this presents an engineering challenge as the panoramic roof is structural part of the of the vehicle and the exertion of such pressure combined with flexing of the vehicle's unibody stresses and weakens the glass, with the vibration of ordinary driving imposing further stress.

70.     In Class Vehicles, the glass used in production cannot withstand the pressures and flexing that the panoramic roof frame and vehicle demand. The consequence is that under ordinary driving conditions, the glass spontaneously shatters, as seen on the following picture of Plaintiff Gamez' 2021 Toyota RAV4:

CLASS ACTION COMPLAINT



71.     Moreover, although some other automakers use laminated glass in their panoramic roofs to reduce the risk of sudden explosion and injury to the vehicle occupants, Toyota, in the Class Vehicles, does not.

72.     The Glass Roof Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on the driver's ability to drive the vehicle and the distraction caused by the panoramic roof failure, and the potential for injury.

**Consumer Complaints Reveal the Magnitude of the Defect**

73.     Class Vehicle owners report that despite having driven other vehicles for decades, their Class Vehicles are the only vehicles they have seen suffer from panoramic roofs that unexpectedly and spontaneously explode under similar circumstances, i.e., where there has been no impact damage or other explanation for the failure:

CLASS ACTION COMPLAINT

- NHTSA Complaint No. 1701591/ID No. 11365940, October 23, 2020 (Incident Date October 23, 2020): "Driving new 2021 Toyota RAV4 and the sunroof blew out *for no apparent reason*."

- NHTSA Complaint No. 1757981, July 19, 2021 (Incident Date June 25, 2012): "June 25, 2012 [sic] driving to work at about 7:35 in the morning going about 45 mph my moon roof exploded. *No other[] cars were around me and nothing hit my car or moon roof for this to happen*. I called the police for a report if I needed it, but I did not. I drove it to the dealership after this happened and spoke with the sales manager that I had bought the car from in January. My car was only 5 months old. They replaced my moonroof and gave me a rental car and said it would be covered under warranty."

- NHTSA Complaints Nos. 1782742, 1782743, December 13, 2021 (Incident Date between December 11 and December 13, 2021): "I found the moonroof of my *15-day old 2021 Toyota RAV4 spontaneously exploded while sitting parked in my driveway*. As the shade that covers the moonroof was open, I incurred minor abrasions from not realizing that 's\*\*t on my console" was not dust or fuzz but tiny shards of broken glass that I had already swiped with my hand. There is a large, jagged hole near center on the rear section of glass and the entire moonroof is shattered. Strangely, the glass around the hole is bowed outward as if something was shot through from the inside of the vehicle. Thankfully I was not driving and did not have my kids in the car with me when it happened because there would have been definite safety issues for me, my passengers, and any others out on the road with me. The car was last used about 6:30 pm on Saturday, 12/11/21 and not used again until about 11:15 am on Monday, 12/13/21. It spent the time not being used parked towards the rear of my driveway, shaded by my house. *There are no trees or other possible falling hazards near my driveway and nothing found in or around my car to suggest a projectile/object was involved.*"

- NHTSA Complaint No. 1783553/ID No. 11444257, December 18, 2021 (Incident Date December 15, 2021): "I was driving down an open road when I suddenly heard a loud rattling noise and a huge explosion. Luckily there wasn't [sic] any cars around us and we weren't going very fast. As you can imagine this was very shocking and distracting and I was eventually able to pull over to the side of the road to investigate what had happened. I had my 9-month pregnant sister as well as my 4-month infant in the car. What we found was the sunroof of my car had explode[ed] upwards and there were shards of glass everywhere. We had been experiencing extreme weather conditions the past few days and had to assume this to be the cause. *There was no one around us nor anything above us and my car is kept under a carport. An external force would not cause the sunroof glass to explode upwards. It would be the exact opposite and smashed downwards*."

- NHTSA Complaint No. 1787202, January 10, 2022: "I was driving on a two-lane highway going approximately 55 mph. It was around 8 pm and it was already dark out. *There was nothing near me on the road*. While driving, I heard a loud explosion/pop. I swerved into the opposite lane due to the sound. Luckily there were

17

no cars oncoming.  I was able to get back to the right side of the road and find a spot to stop/park.  I then looked at my sunroof and it was shattered in a circular pattern.  It was *not from an external force*."

- NHTSA Complaint Nos. 1805004, 1805005/ID No. 11459421, April 3, 2022 (Incident Date April 3, 2022): "While driving on the highway the sunroof spontaneously exploded outwards sending glass shards behind the vehicle and also down into the cabin. *There was no impact with any objects and the vehicle was not passing under any structures*. It was moderate temperature day [approximately] 60 degrees F so the roof was not especially hot or cold.  There is dashcam footage available showing nothing abnormal happened at the time of glass failure."

- NHTSA Complaint No. 1806109/ID No. 11460219, April 8, 2022 (Incident Date April 6, 2022): "The component that failed was the glass of my sunroof.  My sunroof somehow exploded on me while I was driving. *There were no vehicles or other things that would have caused rocks to fly and hit the dead center of the sunroof*.  If you look at the images you can tell that the class is pointing upward and not downward.  I was lucky that I had my son [sic] shade cover closed.  If it was not closed I would have had large pieces of glass fall in my vehicle and potentially cause cuts and lesions from the glass.  This could not be heat related as it was at 6:58 a.m.  This problem has not been identified by any dealer or independent repair center but it's very similar to many others who have had these complaints on your website and consumer reports.  The components have not been inspected by the dealer or police and there were no warning signs of any kind no visible original cracks or anything that would have caused it to do what i[t] did.  I did attempt to contact Toyota but they refused to assist and told me to contact my insurance.  The dealership Crown Toyota refused to assist and told me to contact my insurance and said that [a] rock must have hit.  They also wouldn't repair it because they will not accept payment from my insurance company which is Mercury."

- NHTSA Complaint No. 1822790/ID No. 11472192, July 3, 2022 (Incident Date July 3, 2022): "The sunroof spontaneously exploded while driving on the highway. *There were no cars nearby.  There was nothing that hit the vehicle*, further supported by the glass clearly having exploded outwards."  Glass shrapnel could have hit nearby vehicles.  If the interior panel was opened to the sunroof there would have been a significant amount of glass shrapnel inside the vehicle, hitting the driver and passengers…"

- NHTSA Complaint No. 1825881/ID No. 11474351, July 17, 2022 (Incident Date June 9, 2022): "Driving 35 MPH the sunroof glass shattered. *There were no other vehicles going by and no rocks were seen*.  If the sunroof shade were open the glass would have fallen on top of the driver possibly causing injury or an accident.  I have found reports of this happening to other vehicles online."

- NHTSA Complaint No. 1840818/ID No. 11484909, September 16, 2022 (Incident Date September 16, 2022): "I was driving on the highway, 45 minutes into my 3[-] hour trip.  As I was approaching a bridge, I suddenly heard a very large bang—sort of

CLASS ACTION COMPLAINT

like a gunshot.  I immediately looked around and noticed my moonroof in my vehicle had completely shattered.  It was still held together, but I very quickly closed the moonroof's inner cover to assure no glass would fall into my car.  Noticeably, there was small shards of glass all over my center console.  I could hear the glass falling onto my moonroof and could see glass flying behind me with a vehicle traveling behind.  I very well could have suffered injuries/cuts if the glass had shattered onto me.  Not only is this dangerous for me, but the people behind me.  It could have cracked their windshield, or even given someone a flat tire.  Now I am left to travel 2 hours not knowing what could potentially happen next.  I took the rest of the travel slow.  ***This happened with absolutely no warning***.  It was sudden, loud, and scary.  I am left to pay for this now because there is no recall or warranty."

- NHTSA Complaint No. 1847514, October 17, 2022: "While driving on the freeway, suddenly we heard a loud noise and then felt particles dropping on us.  While attempting to assess what happened in and outside of the vehicle, we noticed the sunroof/moonroof shattered and small shards of glass were everywhere.  The loud sound and attempt to assess the situation could have caused an accident.  ***We were not passing under anything like a bridge and could determine no cause for the breaking of the glass.  Afterward when I could safely pull over so we could clean the glass off out of the vehicle, we found no rock or other debris in my vehicle that did not belong***.  Only shards of glass in our hair, on our bodies, and everywhere in the car, sticking into our skin and making one passenger bleed slightly."

- NHTSA Complaint No. 1847598, October 18, 2022: "I was driving my 2021 Toyota Rav4 Prime on the freeway.  As I was exiting the freeway there was a LOUD explosion in my car that scared the hell out of my friend and I, almost causing me to get into an accident.  I pulled over and got out to see what happened.  As I walked around the car I checked the tires, which were fine.  I did not see anything (it was dark).  I could not see the roof (I am short) and the moonroof shade was closed.  I got in the car and started driving again and my friend said she could hear crackling, so I pulled into a parking lot.  We got out again, and my friend looked up on the top of the car and could see the moonroof had exploded.  The glass was cracked around the outer edge.  ***There was no mark where a rock would have hit it.  There were no debris marks anywhere, and we did not hear anything hit it***.  It was an explosion that you could feel.  ***There was absolutely no warning***.  I took the car in the next day to the dealer and the service agent told me to come back on Monday, which is today.  ***The service agent at the dealership agreed that there were no marks or dings where a rock hit it***.  He agreed that it looked like it exploded the way it was cracked all around the outer edge of the glass.  Late this afternoon they called to tell me that there is a 'quality control' person coming tomorrow to look at it so they can decide whether they will honor their warranty.  I also purchased the 'bumper to bumper' extended warranty when I bought the car, less than a year ago.  I always keep the moonroof shade open.  Fortunately, I had it closed at that time[,] or we would have at least gotten cut.  I usually have my grandson in the backseat and there are glass shards in the backseat and in his car seat. If he had been in the car, my grandson would have gotten cut."

CLASS ACTION COMPLAINT

- NHTSA Complaint No. 11501889, January 15, 2023 (Incident Date January 13, 2023): "The glass of the sunroof exploded and shattered when I was driving on the highway from Chicago to South Bend at normal speed on January 13, 2023, around 4 p.m. I heard a loud explosion sound and found the sunroof glass shattered and falling. *There was no vehicle around me, no impact with any objects, and the vehicle was not passing under any structures at the time of explosion*.  I was not injured by the incident but was really scared and had to pullover to the side.  After recovering from shock, I managed to drive home with the shattered sunroof and could feel glass pieces falling on my right shoulder when I was driving.  This was the first time for the issue to appear[,] *and there was no sign or symptom prior to the problem.* I purchased this brand-new vehicle one year ago.  I found other similar complaints online on spontaneous sunroof explosion of Toyota RAV4 and they look similar to what I experienced…"

74.     Further, Toyota refuses to repair or repair or replace the Glass Roof Defect under its written warranty when given a reasonable opportunity to do so.  Toyota has not issued any bulletins or instructions to its dealerships regarding the Class Vehicles' panoramic roofs' propensity to spontaneously explode or repairing the same, nor has Toyota authorized its dealerships to cover Class Vehicle panoramic roof repair or replacement costs under Toyota's warranty. In addition, Toyota has refused to repair or replace the Plaintiffs' panoramic roofs under Toyota's warranty.  Likewise, as detailed in the NHTSA and online complaints reproduced below, other Class Vehicle owners complain that Toyota dealers charge them out-of-pocket for repairs or insist that they file a claim under their insurance policies:

- NHTSA Complaint No. 1861278, December 28, 2022 (Incident Date December 27, 2022): "…On December 27, 2022, we were running errands and…our sunroof EXPLODED.  It sounded like a gun went off…We took our car immediately to a Toyota dealership within half a mile and they contacted the main Toyota office…Toyota insisted it must have been from road debris hitting the sunroof and then the internal cabin pressure caused the glass to go up/out…*Toyota is not helping us with this situation and we are having to use insurance*.  After reading other similar incidences, I was shocked how many others have experienced this on Toyota nation, Reddit, and NHTSA…"

- NHTSA Complaint Nos. 1716991, 1716992/ID No. 11386212, January 3, 2021 (Incident Date December 31, 2020): "This issue happened on 12/31/2020…the sunroof has shattered and there was glass everywhere.  I have no way of explaining how this happened and *I am very frustrated that I have to make a claim on a car I have had for maybe a month and a half* and even more upset that I cannot explain

how this actually happened.  I was also surprised that there were people having similar issues with the sunroof!"

- NHTSA Complaint No. 1773786/ID No. 11437229, October 18, 2021 (Incident Date October 17, 2021): "Moon roof exploded and shattered while driving down the road in normal conditions, no other issues.  Vehicle is less than 3 months old with 7,000 miles…***Currently, had to tarp and duct tape damage because dealership will not fix[] under warranty unless I can prove it was a defective glass/part.  My dealer did text me and I have it that there are problems but it's so hard to prove it will be my expense out of pocket***…"

- NHTSA Complaint No. 1788929, January 20, 2022: "The contact owns a 2021 Toyota Rav4 Hybrid.  The contact stated while driving approximately 50 MPH, the sunroof exploded, and fragments of glass fell inside the cabin of the vehicle.  ***The vehicle was taken to a local dealer and was diagnosed with needing the sunroof replaced.  The vehicle was not repaired.  The manufacturer was informed of the failure but offered no assistance***.  The failure mileage was approximately 20,000."

- NHTSA Complaint No. 1806109/ID No. 11460219, April 8, 2022 (Incident Date April 6, 2022): "The component that failed was the glass of my sunroof.  My sunroof somehow exploded on me while I was driving.  There were no vehicles or other things that would have caused rocks to fly and hit the dead center of the sunroof…***I did attempt to contact Toyota but they refused to assist and told me to contact my insurance.  The dealership Crown Toyota refused to assist and told me to contact my insurance and said that [a] rock must have hit***.  They also wouldn't repair it because they will not accept payment from my insurance company which is Mercury."

75.     Plaintiffs have likewise been forced to file claims under their insurance policies and pay a deductible to have the panoramic roofs replaced or repaired even though their vehicles are covered by Toyota's warranty.

76.     Moreover, on information and belief, when panoramic roof repairs are performed by Defendants' dealers (for charge), defective panoramic roofs are merely replaced with similarly defective panoramic roofs. For instance, the panoramic roof in Plaintiff Gamez's vehicle shattered and was replaced and then the replacement panoramic roof also exploded.

77.     Dozens if not hundreds of purchasers and lessees of the Class Vehicles have experienced the Glass Roof Defect. Given how widespread the issue is and the fact that panoramic roofs often shatter shortly after the Class Vehicles' sales, Class Vehicles' owners

CLASS ACTION COMPLAINT

have been complaining about the Glass Roof Defect and have been posting such complaints online since at least late 2020.

78.     For instance, on www.ToyotaNation.com, a Toyota vehicle enthusiast website that upon information and belief Toyota regularly monitors, an April 1, 2022, post written by a Class Vehicle owner noted that they "have a Toyota RAV4 2020 XLE premium" and that the sunroof window glass shattered in March of 2022 while driving on the freeway. The owner further noted that the inside panoramic roof cover was closed; otherwise, the glass would have fallen inside the car and on the driver.[2]  Other Class Vehicle owners responded that they had near-identical experiences; one owner of a 2020 RAV4 XLE posted on March 31, 2022, that the panoramic roof exploded from the inside out with no debris or impact.[3]

79.     Similarly, on Reddit, Class Vehicles' owners have been complaining about the Glass Roof Defect, including a post about the panoramic roof of a 2021 Toyota RAV4 Prime XSE spontaneously exploding.[4]  Other RAV4 forums and groups contain similar stories: the owner of a 2021 Toyota RAV4 Hybrid XSE posted that, while driving on the freeway on June 3, 2021, he "heard a loud bang and rattle sound" and "saw shards of glass streaming off the back of the car.  [He] opened the sunshade and found the glass panel had shattered… [He] found nothing like a rock impact or any scratches on the roof."  The vehicle was two months old at the time of the incident.[5]  Toyota declined to cover the replacement of the panoramic roof and required the owner to submit a claim under his insurance policy, claiming that the panoramic

---

[2] https://www.toyotanation.com/threads/shattered-window-glass-for-no-apparent-reason-while-driving.1717121/ (last visited Jan. 19, 2023).

[3] https://www.rav4world.com/threads/sunroof-glass-exploded.292629/page-2 (last visited Jan. 19, 2023).

[4] https://www.reddit.com/r/rav4prime/comments/rohhyi/sunroof_spontaneously_exploded/ (last visited Jan. 19, 2023).

[5] https://www.rav4world.com/threads/sunroof-shattered.313549/ (last visited Jan. 19, 2023).

CLASS ACTION COMPLAINT

roof shattered from impact by an object.[6]  In a post from August 26, 2021, another user reported that the same thing happened to their RAV4 that day.[7]

80.    On October 23, 2020, another Reddit user posted that the sunroof in his 2021 RAV4 blew out within 24 hours of owning the vehicle.[8]

81.    On October 23, 2020, another Reddit user posted that the panoramic roof in his 2021 RAV4 blew out within 24 hours of owning the vehicle.[9]

82.    Such posts are also common in Facebook groups dedicated to RAV4 owners. For example, in an October 10, 2021, post, a member of the Facebook group "Toyota RAV4 Hybrid" posted that she had been driving her 2021 Toyota RAV4 Hybrid XSE on a straight stretch of road when she heard a boom, and the panoramic roof exploded.  She noted that she had purchased the brand-new vehicle approximately three months prior to the incident. This user also posted in the Facebook group "Toyota RAV4 Club" on October 8, 2021, regarding the incident. In a comment to this post, another user noted, "Been seeing a bunch of posts about these things shattering across the RAV4 groups."

83.    Another Facebook user posted pictures of a shattered panoramic roof in "Toyota RAV4 Hybrid" group on May 13, 2022, asking whether anyone else had experienced a similar experience while driving. In response, another group member posted photos of his RAV4 with the panoramic roof shattered.  These photos were posted at or about the same time as the original post, in May of 2022.

---

[6] *Id.*
[7] *Id.*
[8] https://www.reddit.com/r/Toyota/comments/jgtz3n/new_2021_rav4_sunroof_blew_out/ (last visited on Jan. 24, 2023).
[9] https://www.reddit.com/r/Toyota/comments/jgtz3n/new_2021_rav4_sunroof_blew_out/ (last visited on Jan. 24, 2023).

CLASS ACTION COMPLAINT

84.     Another Facebook member posted on August 20, 2021, in "Toyota RAV4 Club" that the sunroof blew out in his 2021 RAV4 and sounded like a gunshot.  He noted that there had been nothing around the vehicle at the time and posted photos of the shattered panoramic roof in the group. He further noted that upon presenting the vehicle to a dealership, the dealership advised him that the explosion was from an outside source; therefore, he had to make a claim under his insurance policy and pay a $500.00 deductible for the repairs. According to the member, he did a Google search and found several complaints of panoramic roofs suddenly exploding and breaking.

85.     Yet another Facebook member of "Toyota RAV4 Club" posted to the group on September 28, 2021, commenting, "Now I'm starting to think it was a bad idea to get [a RAV4]. I've seen so many posts about these things spontaneously combusting…"  Comments regarding the exploding panoramic roof appear to date back at least as far as October of 2019 when RAV4 owners were reporting that the panoramic roofs were exploding while driving even though there was nothing in the vicinity to hit the panoramic roof or vehicle.

86.     Class Vehicle owners have continued to post similar posts and comments on other forums about the Glass Roof Defect to date. For example, another Class Vehicle owner posted on March 25, 2022, that the same thing happened to them while driving down the highway and that it was "quite startling as the sunshield was pulled back and I was covered in glass."[10] Another Class Vehicle owner posted on October 17, 2022, that the panoramic roof on their RAV4 exploded the prior week.[11]

---

[10] https://www.rav4world.com/threads/sunroof-shattered.313549/page-2
[11] https://www.rav4world.com/threads/sunroof-shattered.313549/page-3

CLASS ACTION COMPLAINT

87.     Further, the owners of the Class Vehicles voiced their complaints concerning the Glass Roof Defect with NHTSA. Upon information and belief, Toyota actively monitored these complaints during the relevant time period, demonstrating that Toyota has known about the defect at all relevant times.

- NHTSA Complaint No. 1699773/ID No. 11364557, October 15, 2020 (Incident Date October 12, 2020): "The contact owns a 2021 Toyota RAV4.  The contact stated that while his wife was driving approximately 75 MPH, the glass sunroof suddenly exploded.  During the failure, the sunroof was closed.  The local dealer Valley High Toyota located at 14612 Valley Center Dr., Victorville, CA 92395 and the manufacturer were notified of the failure.  The failure mileage was 1,500."

- NHTSA Complaint No. 1701591/ID No. 11365940, October 23, 2020 (Incident Date October 23, 2020): "Driving new 2021 Toyota RAV4 and the sunroof blew out for no apparent reason."

- NHTSA Complaint Nos. 1716991, 1716992/ID No. 11386212, January 3, 2021 (Incident Date December 31, 2020): "This issue happened on 12/31/2020.  I was driving to work this evening.  I came onto an onramp during my drive and I began increasing my speed to 70 MPH.  As I'm accelerating I started to notice a whistling sound coming from the sunroof.  I instantly assumed that my husband had accidentally opened the sunroof and had not closed it back up all the way.  (We have not had this car very long at all so we are still learning which buttons do what.)  As I pull back the cover I notice that there are shards of glass falling onto my lap from the sunroof.  I was in complete shock and pulled over to make sure I was not mistaken.  Sure enough the sunroof has shattered and there was glass everywhere.  I have no way of explaining how this happened and I am very frustrated that I have to make a claim on a car I have had for maybe a month and a half and even more upset that I cannot explain how this actually happened.  I was also surprised that there were people having similar issues with the sunroof!"

- NHTSA Complaint No. 1757981/ID No. 11425434, July 19, 2021 (Incident Date June 25, 2012): "June 25, 2012 [sic] driving to work at about 7:35 in the morning going about 45 mph my moon roof exploded.  No other[] cars were around me and nothing hit my car or moon roof for this to happen.  I called the police for a report if I needed it, but I did not.  I drove it to the dealership after this happened and spoke with the sales manager that I had bought the car from in January.  My car was only 5 months old.  They replaced my moonroof and gave me a rental car and said it would be covered under warranty."

- NHTSA Complaint No. 1773786/ID No. 11437229, October 18, 2021 (Incident Date October 17, 2021): "Moon roof exploded and shattered while driving down the road in normal conditions, no other issues.  Vehicle is less than 3 months old with 7,000 miles.  It sounded like a gunshot and only because I reacted without panic did it not cause me to have an accident because of the major distraction.  Pulled over and no other damage.

Had to drive 45 miles per hour to my destination or glass would have sprayed on anyone behind me.  Currently, had to tarp and duct tape damage because dealership will not fix[] under warranty unless I can prove it was a defective glass/part.  My dealer did text me and I have it that there are problems but it's so hard to prove it will be my expense out of pocket.  I would appreciate any help on other Toyotas having a similar problem and wanted to officially report to help out the next person if I can't obtain proof of a defective part."

- NHTSA Complaints Nos. 1782742, 1782743/ID No. 11443668, December 13, 2021 (Incident Date December 12, 2021): "I found the moonroof of my 15-day old 2021 Toyota RAV4 spontaneously exploded while sitting parked in my driveway. As the shade that covers the moonroof was open, I incurred minor abrasions from not realizing that 's**t on my console" was not dust or fuzz but tiny shards of broken glass that I had already swiped with my hand.  There is a large, jagged hole near center on the rear section of glass and the entire moonroof is shattered. Strangely, the glass around the hole is bowed outward as if something was shot through from the inside of the vehicle. Thankfully I was not driving and did not have my kids in the car with me when it happened because there would have been definite safety issues for me, my passengers, and any others out on the road with me.  The car was last used about 6:30 pm on Saturday, 12/11/21 and not used again until about 11:15 am on Monday, 12/13/21.  It spent the time not being used parked towards the rear of my driveway, shaded by my house.  There are no trees or other possible falling hazards near my driveway and nothing found in or around my car to suggest a projectile/object was involved."

- NHTSA Complaint No. 1783553/ID No. 11444257, December 18, 2021 (Incident Date December 15, 2021): "I was driving down an open road when I suddenly heard a loud rattling noise and a huge explosion.  Luckily there wasn't [sic] any cars around us and we weren't going very fast.  As you can imagine this was very shocking and distracting and I was eventually able to pull over to the side of the road to investigate what had happened. I had my 9-month pregnant sister as well as my 4-month infant in the car.  What we found was the sunroof of my car had explode[ed] upwards and there were shards of glass everywhere.  We had been experiencing extreme weather conditions the past few days and had to assume this to be the cause.  There was no one around us nor anything above us and my car is kept under a carport.  An external force would not cause the sunroof glass to explode upwards.  It would be the exact opposite and smashed downwards."

- NHTSA Complaint No. 1787202, January 10, 2022: "I was driving on a two-lane highway going approximately 55 mph.  It was around 8 pm and it was already dark out. There was nothing near me on the road.  While driving, I heard a loud explosion/pop.  I swerved into the opposite lane due to the sound.  Luckily there were no cars oncoming.  I was able to get back to the right side of the road and find a spot to stop/park.  I then looked at my sunroof and it was shattered in a circular pattern.  It was not from an external force."

- NHTSA Complaint No. 1788929, January 20, 2022: "The contact owns a 2021 Toyota Rav4 Hybrid.  The contact stated while driving approximately 50 MPH, the sunroof

CLASS ACTION COMPLAINT

exploded, and fragments of glass fell inside the cabin of the vehicle.  The vehicle was taken to a local dealer and was diagnosed with needing the sunroof replaced.  The vehicle was not repaired.  The manufacturer was informed of the failure but offered no assistance.  The failure mileage was approximately 20,000."

- NHTSA Complaint Nos. 1805004, 1805005/ID No. 11459421, April 3, 2022 (Incident Date April 3, 2022): "While driving on the highway the sunroof spontaneously exploded outwards sending glass shards behind the vehicle and also down into the cabin.  There was no impact with any objects and the vehicle was not passing under any structures.  It was moderate temperature day [approximately] 60 degrees F so the roof was not especially hot or cold.  There is dashcam footage available showing nothing abnormal happened at the time of glass failure."

- NHTSA Complaint No. 1806109/ID No. 11460219, April 8, 2022 (Incident Date April 6, 2022): "The component that failed was the glass of my sunroof.  My sunroof somehow exploded on me while I was driving.  There were no vehicles or other things that would have caused rocks to fly and hit the dead center of the sunroof.  If you look at the images you can tell that the class is pointing upward and not downward.  I was lucky that I had my son [sic] shade cover closed.  If it was not closed I would have had large pieces of glass fall in my vehicle and potentially cause cuts and lesions from the glass.  This could not be heat related as it was at 6:58 a.m.  This problem has not been identified by any dealer or independent repair center but it's very similar to many others who have had these complaints on your website and consumer reports.  The components have not been inspected by the dealer or police and there were no warning signs of any kind no visible original cracks or anything that would have caused it to do what i[t] did.  I did attempt to contact Toyota but they refused to assist and told me to contact my insurance.  The dealership Crown Toyota refused to assist and told me to contact my insurance and said that [a] rock must have hit.  They also wouldn't repair it because they will not accept payment from my insurance company which is Mercury."

- NHTSA Complaint No. 1822790/ID No. 11472192, July 3, 2022 (Incident Date July 3, 2022): "The sunroof spontaneously exploded while driving on the highway.  There were no cars nearby.  There was nothing that hit the vehicle, further supported by the glass clearly having exploded outwards."  Glass shrapnel could have hit nearby vehicles.  If the interior panel was opened to the sunroof there would have been a significant amount of glass shrapnel inside the vehicle, hitting the driver and passengers…"

- NHTSA Complaint No. 1825881/ID No. 11474351, July 17, 2022 (Incident Date June 9, 2022): "Driving 35 MPH the sunroof glass shattered.  There were no other vehicles going by and no rocks were seen.  If the sunroof shade were open the glass would have fallen on top of the driver possibly causing injury or an accident.  I have found reports of this happening to other vehicles online."

- NHTSA Complaint No. 1831437/ID No. 11478253, August 8, 2022 (Incident Date August 8, 2022): "I was driving and was only 5 miles from my home and I heard a loud pop like an explosion.  My moonroof/sunroof had spontaneously exploded.  Then I heard

CLASS ACTION COMPLAINT

glass moving around as I slowly continued home.  When I got home I inspected what had happened and took a picture and called the dealership I purchased the car from.  I have only owned the car for 7 months."

- NHTSA Complaint No. 11484488/ID No. 11484488, September 14, 2022 (Incident Date September 14, 2022): "Day 2 of a road trip.  [T]he moonroof exploded spontaneously. There were three dogs underneath[;] luckily they were not hurt.  Driver felt the pressure in the car go up before the loud pop.  [T]here is a round hole in the middle and cracks going to the end."

- NHTSA Complaint No. 1840818/ID No. 11484909, September 16, 2022 (Incident Date September 16, 2022): "I was driving on the highway, 45 minutes into my 3[-] hour trip. As I was approaching a bridge, I suddenly heard a very large bang—sort of like a gunshot.  I immediately looked around and noticed my moonroof in my vehicle had completely shattered.  It was still held together, but I very quickly closed the moonroof's inner cover to assure no glass would fall into my car.  Noticeably, there was small shards of glass all over my center console.  I could hear the glass falling onto my moonroof and could see glass flying behind me with a vehicle traveling behind.  I very well could have suffered injuries/cuts if the glass had shattered onto me.  Not only is this dangerous for me, but the people behind me.  It could have cracked their windshield, or even given someone a flat tire.  Now I am left to travel 2 hours not knowing what could potentially happen next.  I took the rest of the travel slow.  This happened with absolutely no warning.  It was sudden, loud, and scary.  I am left to pay for this now because there is no recall or warranty."

- NHTSA Complaint No. 1847514, October 17, 2022: "While driving on the freeway, suddenly we heard a loud noise and then felt particles dropping on us.  While attempting to assess what happened in and outside of the vehicle, we noticed the sunroof/moonroof shattered and small shards of glass were everywhere.  The loud sound and attempt to assess the situation could have caused an accident.  We were not passing under anything like a bridge and could determine no cause for the breaking of the glass.  Afterward when I could safely pull over so we could clean the glass off out of the vehicle, we found no rock or other debris in my vehicle that did not belong.  Only shards of glass in our hair, on our bodies, and everywhere in the car, sticking into our skin and making one passenger bleed slightly."

- NHTSA Complaint No. 1847598, October 18, 2022: "I was driving my 2021 Toyota Rav4 Prime on the freeway.  As I was exiting the freeway there was a LOUD explosion in my car that scared the hell out of my friend and I, almost causing me to get into an accident.  I pulled over and got out to see what happened.  As I walked around the car I checked the tires, which were fine.  I did not see anything (it was dark).  I could not see the roof (I am short) and the moonroof shade was closed.  I got in the car and started driving again and my friend said she could hear crackling, so I pulled into a parking lot.  We got out again, and my friend looked up on the top of the car and could see the moonroof had exploded.  The glass was cracked around the outer edge.  There was no mark where a rock would have hit it.  There were no debris

marks anywhere, and we did not hear anything hit it.  It was an explosion that you could feel.  There was absolutely no warning.  I took the car in the next day to the dealer and the service agent told me to come back on Monday, which is today.  The service agent at the dealership agreed that there were no marks or dings where a rock hit it.  He agreed that it looked like it exploded the way it was cracked all around the outer edge of the glass.  Late this afternoon they called to tell me that there is a 'quality control' person coming tomorrow to look at it so they can decide whether they will honor their warranty.  I also purchased the 'bumper to bumper' extended warranty when I bought the car, less than a year ago.  I always keep the moonroof shade open.  Fortunately, I had it closed at that time[,] or we would have at least gotten cut.  I usually have my grandson in the backseat and there are glass shards in the backseat and in his car seat.  If he had been in the car, my grandson would have gotten cut."

- NHTSA Complaint No. 1852148, November 9, 2022: "The sunroof shatter[ed] while I was driving."

- NHTSA Complaint No. 11495151, November 28, 2022 (Incident Date November 23, 2022): "…My Toyota RAV4 moon roof shield couldn't be able to withstand for the wind during raining when the vehicle speed was at 75 mph on Highway I-35 in Oklahoma.   The glass busted completely, and those glass particles cause[d] inconvenience to the other vehicle[s] on the highway.  I reported this incident to the car dealer but they were so rude to me and said that car is not designed for the 75 mph speed.  Ended up convincing myself that RAV4 is not safe to drive anymore."

- NHTSA Complaint No. 1861278, December 28, 2022 (Incident Date December 27, 2022): "…On December 27, 2022, we were running errands and…our sunroof EXPLODED.  It sounded like a gun went off…We took our car immediately to a Toyota dealership within half a mile and they contacted the main Toyota office…Toyota insisted it must have been from road debris hitting the sunroof and then the internal cabin pressure caused the glass to go up/out…***Toyota is not helping us with this situation and we are having to use insurance***.  After reading other similar incidences, I was shocked how many others have experienced this on Toyota nation, Reddit, and NHTSA…"

- NHTSA Complaint No. 11501631/ID No. 11501631, January 13, 2023 (Incident Date January 13, 2023): "The moonroof glass shattered unexpectedly with no impact or previous damage while driving on the highway.  The vehicle is only 3 months old [and] has not been involved in any accidents or incidents.  If the interior moonroof shade was not closed the glass would have dropped all over the interior potentially harming myself and other passengers in the vehicle."

- NHTSA Complaint No. 11501889/ID No. 11502883, January 15, 2023 (Incident Date January 13, 2023): "The glass of the sunroof exploded and shattered when I was driving on the highway from Chicago to South Bend at normal speed on January 13, 2023, around 4 p.m. I heard a loud explosion sound and found the sunroof glass shattered and falling.  ***There was no vehicle around me, no impact with any objects, and the vehicle was not passing under any structures at the time of explosion***.  I

CLASS ACTION COMPLAINT

was not injured by the incident but was really scared and had to pullover to the side. After recovering from shock, I managed to drive home with the shattered sunroof and could feel glass pieces falling on my right shoulder when I was driving.  This was the first time for the issue to appear[,] ***and there was no sign or symptom prior to the problem.*** I purchased this brand-new vehicle one year ago.  I found other similar complaints online on spontaneous sunroof explosion of Toyota RAV4 and they look similar to what I experienced…"

88.     Although Toyota was aware of the widespread nature of the Glass Roof Defect in the Class Vehicles, and that it posed grave safety risks, Toyota has failed to take adequate steps to notify all Class Vehicle owners of the Defect or provide relief.

89.     Toyota has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Glass Roof Defect contained in the Class Vehicles.

90.     Toyota has not recalled the Class Vehicles to repair the Glass Roof Defect, has not issued any bulletins or instructions to its dealerships regarding the Glass Roof Defect, has not offered to its customers a suitable repair or replacement of parts related to the Glass Roof Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Glass Roof Defect.

91.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

92.     As a result of the Glass Roof Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's panoramic roof is not defective and will not fracture or explode for no reason at all or under circumstances that would not cause non-defective panoramic roofs to similarly fail.  Plaintiffs and Class Members further expect and assume that Toyota will not sell or lease vehicles with known safety defects, such as the Glass

Roof Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Toyota would fail to disclose the Glass Roof Defect to them, and then refuse to remedy the defect under Toyota's warranty.

## CLASS ACTION ALLEGATIONS

### A.   **The Classes**

93.     Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:** All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

94.      In addition, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state-specific class:

> **California Class:** All persons or entities who purchased or leased any 2021 Toyota RAV4 vehicle in the State of California (the "California Class").

95.      Toyota and its employees or agents are excluded from the Class.

### B.   **Numerosity**

96.      Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout California and Arizona.

### C.   **Common Questions of Law and Fact**

97.      There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.      whether the Class Vehicles suffer from the Glass Roof Defect;

b.      whether the Glass Roof Defect constitutes an unreasonable safety hazard;

c.      whether Defendants know about the Glass Roof Defect and, if so, how long Defendants have known of the Defect;

d.      whether the defective nature of the Class Vehicles' panoramic roofs constitutes a material defect;

e.      whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' panoramic roofs to Plaintiffs and the other Class Members;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendants knew or reasonably should have known of the Glass Roof Defect contained in the Class Vehicles before they sold or leased them to Class Members; and

h.      Whether Defendants breached their express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the California Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200 *et seq.*, the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1, 1791.2, 1792, and 1793 *et seq.*, breached express warranty under Cal. Comm. Code § 2313, and whether their conduct constitutes a breach of express and implied warranties under the Magnuson-Moss Warranty Act.

### D.  **Typicality**

98.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendants' wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E.  **Protecting the Interests of the Class Members**

99.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

### F.  **Proceeding Via Class Action is Superior and Advisable**

100.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members

CLASS ACTION COMPLAINT

of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

101.   Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California Class)**

102.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

103.   Plaintiffs and members of the Class are each a "consumer" as defined in 15 U.S.C. § 2301(3).

104.   Defendants are each a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

105.   The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

106.   15 U.S.C. § 2304(a)(1) requires Defendants, as a warrantors, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and Class members.

107.   The Defendants' sale of the defective Class Vehicles and their failure and/or refusal to repair the Class Vehicles' Glass Roof Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

108.     Despite repeated demands, Defendants have failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

109.     As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damages.

## SECOND CAUSE OF ACTION
**Unjust Enrichment**
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California Class)**

110.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

111.     Toyota has long known that about the Glass Roof Defect, which it concealed and failed to disclose to Plaintiffs and Class Members.

112.     As a result of its fraudulent acts and omissions related to the Glass Roof Defect, Toyota obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

113.     Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Glass Roof Defect, paid a higher price for their vehicles which actually had lower values.  Toyota also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

114.     It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

CLASS ACTION COMPLAINT

115.    Toyota's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

116.    As a result of Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

117.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct.

118.    Additionally, Plaintiffs seek injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendants identifies for the Glass Roof Defect. Plaintiffs also seek injunctive relief enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class members with replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform their warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act,**
**§ 1750 *et seq.* of the California Civil Code**
**(Plaintiffs Gamez and Takili on behalf of the California Class)**

119.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

120.    The California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA") prohibits various deceptive practices in connection with the conduct of a business

36

providing goods, property, or services to consumers primarily for personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection. Cal. Civil Code § 1760.

121.    Defendants are each a "person" as defined in Cal. Civil Code § 1761(c).

122.    Plaintiffs Gamez, Takili, and the California Class Members are "consumers" as defined in Cal. Civil Code § 1761(d).

123.    The Class Vehicles constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

124.    Plaintiffs Gamez, Takili, and the California Class Members' purchases or leases of the Class Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

125.    Plaintiffs Gamez, Takili, and the California Class Members purchased or leased the Class Vehicles for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

126.    Defendants violated California Civil Code § 1770(a)(5), (7), (14), and (16) when they sold or leased Plaintiffs Gamez, Takili, and the California Class Members the Class Vehicles with knowledge that they contained the Glass Roof Defect and knowingly concealed said defects from Plaintiffs Gamez, Takili, and the California Class Members with the intent that they rely upon Defendants' concealment.

127.    The Class Vehicles' Glass Roof Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road.  Defendants had exclusive knowledge of the defect and have actively concealed it from consumers.

CLASS ACTION COMPLAINT

128.    In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed that the Class Vehicles are defective.  The existence of the Glass Roof Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

129.    In purchasing or leasing the Class Vehicles, Plaintiffs Gamez, Takili, and the California Class Members were deceived by Defendants' failure to disclose that the Class Vehicles suffered from the Glass Roof Defect as described above, or that Defendants would not repair or replace such defect as required under applicable warranties.

130.    In purchasing or leasing the Class Vehicles, Plaintiffs Gamez, Takili, and the California Class Members were deceived by Defendants' failure to disclose that the Class Vehicles' panoramic roofs are substantially likely to fail and explode in the course of ordinary use of the Class Vehicles.

131.    Defendants owed Plaintiffs Gamez, Takili, and the California Class Members a duty to disclose the truth about the Glass Roof Defect because:

a.  Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' panoramic roofs;

b.  Defendants knew that the Class Vehicles and their panoramic roofs suffered from an inherent defect, were defectively made and/or manufactured, and were not suitable for their intended use;

CLASS ACTION COMPLAINT

    c.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their panoramic roofs; and

    d.   Defendants actively concealed the defective nature of the Class Vehicles and their panoramic roofs from Plaintiffs Gamez, Takili, and the California Class Members.

132.    Defendants intentionally and knowingly concealed material facts regarding the Class Vehicles with an intent to mislead Plaintiffs Gamez, Takili, and the California Class Members.

133.    Plaintiffs Gamez, Takili, and the California Class Members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading.

134.    Plaintiffs Gamez, Takili, and the California Class Members were unaware of the Glass Roof Defect and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

135.    As a result of Defendants' acts, Plaintiffs Gamez, Takili, and the California Class Members have suffered damages.  Plaintiffs Gamez, Takili, and the California Class Members would not have purchased or leased Class Vehicles had the Glass Roof Defect and associated risks and costs been disclosed to them.  They are left with vehicles of diminished value and utility because of such defect, which continues to pose a safety risk and will continue to require future repairs and replacement parts at Class Vehicle owners' expense.

CLASS ACTION COMPLAINT

136.     Plaintiffs Gamez, Takili, and the California Class Members seek an order requiring Defendants to immediately disclose the existence of the Glass Roof Defect and associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Class Vehicles free of charge, and to cease selling new or certified pre-owned Class Vehicles through their dealerships until the defect is remedied.

137.     Plaintiffs Gamez, Takili provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a).  To date, Defendants have failed to provide appropriate relief for their violations of the CLRA. Therefore, Plaintiffs Gamez, Takili, and the California Class Members seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

**FOURTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(Plaintiffs Gamez, Miranda, and Takili on behalf of the California Class)**

138.     Plaintiffs incorporate by reference all of the above paragraphs of this complaint as though fully stated herein.

139.     California's Unfair Competition Law ("UCL"), California's Bus. & Prof. Code, § 17200, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

140.     The Class Vehicles' Glass Roof Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road.  Defendants had exclusive knowledge of the defect and have actively concealed it from consumers.

141.     In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed that the Class Vehicles are defective.  The existence of the Glass Roof Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable

40

CLASS ACTION COMPLAINT

consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

142.     In purchasing or leasing the Class Vehicles, Plaintiffs Gamez, Takili, and the California Class Members were deceived by Defendants' failure to disclose that the Class Vehicles suffer from the Glass Roof Defect as described above, or that Defendants would not cure such defect as required under applicable warranties.

143.     In purchasing or leasing the Class Vehicles, Plaintiffs Gamez, Takili, and the California Class Members were deceived by Defendants' failure to disclose that the Class Vehicles' panoramic roofs are substantially likely to fail in the course of ordinary vehicle operation.

144.     Defendants owed Plaintiffs Gamez, Takili, and the California Class Members a duty to disclose the truth about the Glass Roof Defect because:

a.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' panoramic roofs;

b.   Defendants knew that the Class Vehicles and their panoramic roofs suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use;

c.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their panoramic roofs; and

CLASS ACTION COMPLAINT

  d. Defendants actively concealed the defective nature of the Class Vehicles and their panoramic roofs from Plaintiffs Gamez, Takili, and the California Class Members.

145. Defendants intentionally and knowingly concealed material facts regarding the Class Vehicles with the intent to mislead Plaintiffs Gamez, Takili, and the California Class Members.

146. Plaintiffs Gamez, Takili, and the California Class Members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading.

147. Plaintiffs Gamez, Takili, and the California Class Members were unaware of the Glass Roof Defect and that the Class Vehicles' panoramic roofs are substantially likely to fail in the course of normal everyday driving conditions and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

148. Plaintiffs Gamez, Takili, and the California Class Members are reasonable consumers who do not expect their vehicles to suffer from the Glass Roof Defect.

149. Defendants knew the Class Vehicles and their panoramic roofs suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

150. In failing to disclose the defects with the Class Vehicles' panoramic roofs, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

CLASS ACTION COMPLAINT

151.    The facts Defendants concealed from or failed to disclose to Plaintiffs Gamez, Takili, and the California Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiffs Gamez, Takili, and the California Class Members known that the Class Vehicles suffered from the Glass Roof Defect and posed a safety hazard, they would not have purchased or leased the Class Vehicles or would have paid less for them.

152.    Defendants continued to conceal the defective nature of the Class Vehicles and the Glass Roof Defect even after the Class Members began to report problems.

153.    Defendants' conduct was and is likely to deceive consumers.

154.    Defendants' acts, conduct and practices were unlawful, in that they constituted:

    a.   Violations of the California Consumer Legal Remedies Act;

    b.   Violations of the Song-Beverly Consumer Warranty Act; and

    c.   Violations of the express warranty provisions of California Commercial Code section 2313.

155.    By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

156.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

157.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs Gamez, Takili, and the California Class Members have suffered and will continue to suffer actual damages.

158.    The Class Vehicles are worth less with the Glass Roof Defect.

CLASS ACTION COMPLAINT

159.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs Gamez, Takili, and the California Class Members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

160.    Further, Plaintiffs Gamez, Takili, and the California Class Members seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money Plaintiffs Gamez, Takili, and the California Class Members paid for the Class Vehicles and/or restitutionary disgorgement of profits from Defendants. Plaintiffs also seek attorneys' fees and costs under Cal Code Civ. Proc. § 1021.5.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty Pursuant to Song-Beverly**
**Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.***
**(Plaintiffs Gamez and  Takili on behalf of the California Class)**

161.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

162.    Defendants are each a merchant with respect to motor vehicles.

163.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiffs Gamez, Takili, and the California Class Members.

164.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

165.    Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Glass Roof Defect and thus were not in merchantable condition when Plaintiffs Gamez, Takili, and the California Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

166.    Defendants have breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

167.    As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

168.    Additionally, as a result of the Glass Roof Defect, Plaintiffs Gamez, Takili, and the California Class Members were harmed and suffered actual damages.

169.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**SIXTH CAUSE OF ACTION**
**Breach of Express Warranty under Cal. Comm. Code § 2313**
**(Plaintiffs Gamez and Takili on behalf of the California Class)**

170.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

171.    In connection with the sale or lease of the Class Vehicles to Plaintiffs Gamez, Takili, and the California Class Members, Defendants provided Plaintiffs Gamez, Takili, and the California Class Members with a New Vehicle Limited Warranty, under which they agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

172.    Plaintiffs Gamez, Takili, and the California Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles, and Defendants' warranties were part of the basis of the bargain.

173.    Defendants breached these express warranties in that the Class Vehicles suffer from the above-described defects with the panoramic roofs, which substantially impair the Class

45

Vehicles' use, safety, and value to Plaintiffs Gamez, Takili, and the California Class Members, but Defendants have failed to cover the costs of repairing or replacing the defective panoramic roofs under their warranty.

174.    Specifically, as a result of a defect in the manufacturing process and/or the use of defective materials, each of the California Class Vehicles came off the assembly line in substandard condition and was manufactured in such a way that their panoramic roofs do not function or perform as designed and result in the Glass Roof Defect, and the Class Vehicles differ from the vehicles that Defendants intended to sell.

175.    Plaintiffs Gamez, Takili, and the California Class Members have given Defendants reasonable opportunities to cure said defects under Toyota's warranty, but Defendants have failed or refused to repair or replace the defective panoramic roofs under Defendants' New Vehicle Limited Warranty.

176.    As a result of said nonconformities, Plaintiffs Gamez, Takili, and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

177.    Plaintiffs Gamez,  Takili, and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

178.    Plaintiffs Gamez, Takili, and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the panoramic roofs did not function as advertised and warranted, and that necessary repairs to cover the defective panoramic roofs would not be covered under Defendants' warranty.

CLASS ACTION COMPLAINT

179.     As a result of Defendants' breach of express warranties, Plaintiffs Gamez, Takili, and the California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiffs Gamez, Takili, and the California Class Members actually received.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to Song-Beverly**
**Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2,** *et seq.*
**(Plaintiffs Gamez and Takili on behalf of the California Class)**

180.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

181.     Plaintiffs Gamez, Takili, and the California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

182.     Defendants are each a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

183.     The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

184.     Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

185.     In connection with the sale or lease of the Class Vehicles to Plaintiffs Gamez, Takili, and the California Class Members, Defendants provided Plaintiffs Gamez, Takili, and the California Class Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

186.     Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiffs Gamez, Takili, and the California Class Members, Defendants provided Plaintiffs Gamez, Takili, and the California Class Members with a New Vehicle Limited Warranty, under which they

CLASS ACTION COMPLAINT

agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

187.    Plaintiffs Gamez, Takili, and the California Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles and Defendants' warranties were part of the basis of the bargain.

188.    Defendants breached these express warranties in that the Class Vehicles suffer from the above-described defects with the panoramic roofs, which substantially impair the Class Vehicles' use, safety, and value to Plaintiffs Gamez, Takili, and the California Class Members.

189.    Plaintiffs Gamez, Takili, and the California Class Members have given Defendants reasonable opportunities to cure said defects, but Defendants have been unable to do so within a reasonable time.

190.    As a result of said nonconformities, Plaintiffs Gamez, Takili, and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

191.    Plaintiffs Gamez, Takili, and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs Gamez, Takili, and the California Class Members' acceptance of the Class Vehicles.

192.    Plaintiffs Gamez, Takili, and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the panoramic roofs did not function as advertised and warranted.

193.    As a result of Defendants' breach of express warranties, Plaintiffs Gamez, Takili, and the California Class Members have been damaged in an amount that is the difference

between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiffs Gamez, Takili, and the California Class Members actually received.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

a. An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendants to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorneys' fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

CLASS ACTION COMPLAINT

h.   Plaintiffs demand that Defendants perform a recall, and repair all Class

Vehicles; and

i.   Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  March 29, 2023

By:   /s/   *Jody B. Burton*
Jody B. Burton, Esq.
Lemberg Law, LLC
43 Danbury Road
Wilton, CT 06897
Tel.: (203) 653-2250 ext. 5501
Fax: (203) 653-3424
Email: jburton@lembegrlaw.com
*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT